UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

MICHAEL ALETUM                               *

            Plaintiff                        *

      v.                                      *        Civil Case No. 8:19-cv-02719-AAQ

ANCHOR STAFFING AGENCY, INC.    *

            Defendant                        *

## MEMORANDUM OPINION

This is a case concerning alleged violations of the Americans with Disabilities Act ("ADA").  42 U.S.C. § 12101 *et seq*.  Pending before the Court is Defendant Anchor Staffing Agency's Motion for Summary Judgment.  ECF No. 62.  The Motion has been fully briefed and I conclude that a hearing is not necessary under this Court's Local Rules.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons discussed below, Defendant's Motion shall be denied.

## BACKGROUND

Plaintiff Michael Aletum experiences hearing loss.  ECF No. 68-1, at 58; ECF No. 70, at 18.  Between 2005 and 2015, he worked a number of jobs across various food industries and in warehouses.  ECF No. 70, at 28-42.  *See* ECF No. 68-1, at 25-28.  Since 2015, Mr. Aletum has worked as a warehouse supervisor/order builder for Coca-Cola Refreshments, where his duties include supervising personnel, managing inventory and equipment, overseeing shipping and receiving, and operating within various budgets.  ECF No. 68-1, at 25; ECF No. 70, at 39-42.

On April 26, 2018, Mr. Aletum applied to Anchor Staffing Agency, Inc., to work as a Warehouse Manager.  ECF No. 70, at 53.  He submitted his application via an employment

aggregation website, Indeed.com, *id*. at 22, on which he found a posting that indicated the

Warehouse Manager position was available and that a successful applicant would be responsible

for operation of the entire warehouse, "including facilities management, operations management,

and customer service." ECF No. 68-1, at 13.  A successful applicant would be required to:

> manage all drivers and drivers' schedules; ensure required
> paperwork for drivers and trucks are completed and filed; oversee
> mileage and fuel reports for trucks . . . ; oversee [that] drivers have
> completed their truck inspection paperwork daily; oversee [that] the
> drivers are trained and following the most current Fleet Safety
> Procedures; maintain truck maintenance, service and repair records
> for each truck . . . ; conduct Monthly Truck inspections for accuracy
> of material loaded; [be] accountable for deliveries being on time and
> meeting delivery requirements for . . . customers; conduct daily walk
> through of warehouse to set work priorities for staff; set daily job
> expectation[s] for each warehouse person [and] provide good
> direction; oversee receiving and ensure company procedures are
> followed; confirm that material is being put away promptly and
> accurately; ensure accuracy and timely pulling of orders . . . ;
> confirm returns are inspected/verified and are handled in accordance
> with company procedure; create procedures to uncover errors and
> fix the root of the problem; use available reports to assist in
> identifying errors and proper follow-up; address employees'
> performance issues as they arise by using progressive disciplinary
> measures; arrange ongoing training for each warehouse employee .
> . . ; conduct performance appraisals on warehouse staff and assist in
> setting job goals; communicate with sales delivery or service
> problems; maintain organization of office and of office files;
> maintain organization and cleanliness of warehouse and yard . . . ;
> [be] accountable for building and yard maintenance which includes
> the completion of the Monthly Branch Inspection Checklist; [be]
> responsible for all Powered Industrial Truck Maintenance and
> ongoing training of staff; ensure company Safety Program is
> communicated and followed daily; [ensure] accidents are
> investigated and reported accurately . . . ; maintain security systems
> for building and yard; [and] manage resources and expense budget
> for warehouse.

*Id*. at 13-14.  The posting also provided that preferred skills for the position included leadership,

interpersonal and communication skills; teamwork; delegation; administrative skills; basic math

and writing skills; literacy in computers, systems, material handling equipment, and basic office equipment; product knowledge; and knowledge of warehouse operations, company policy, and procedures.  *Id*. at 13.

On April 26, 2018, Anchor Staffing recruiter Marley Bonney called Mr. Aletum at his "Purple Relay Service" phone number and left a voicemail message requesting that he return her call to discuss his application for the Warehouse Manager position.  ECF No. 70 at 54.  Purple Relay is a service that provides American Sign Language ("ASL") interpreters to help individuals experiencing hearing loss communicate over the phone.  ECF No. 39, at ¶ 13; *About*, PURPLE COMMUNICATIONS, INC., https://www.purplevrs.com/about (last visited Mar. 21, 2023).  Mr. Aletum called Ms. Bonney multiple times on the 26th in response to her call, but was unable to get through to speak to her.  ECF No. 70, at 71.  *See also* ECF No. 68-1, at 44.  Mr. Aletum returned Ms. Bonney's call again on April 30, 2018, ECF No. 70, at 72, but upon receiving his call, Ms. Bonney hung up the phone.  *Id*. at 73.  Mr. Aletum them called Ms. Bonney a second time: they spoke for approximately one minute; after which, Ms. Bonney ended the call by saying that she had to interview other applicants and that she would then call him back.  *Id*. at 57.  Mr. Aletum never received a response after that call and never had the opportunity to be considered any further for the position.  *Id*. at 69.

On September 26, 2018, Mr. Aletum filed a Charge of Discrimination against Anchor Staffing with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that Anchor Staffing was aware of his disability during the hiring process and did not consider him for the position in violation of the ADA.  ECF No. 68-1, at 1.  As part of its filings in the EEOC's investigation, Anchor Staffing submitted a sworn affidavit signed by Ms. Bonney in which she claimed that she had never spoken to Mr. Aletum and thus could not have been aware of his

disability.  *Id*. at 8.  On May 24, 2019, the EEOC issued a determination in favor of Mr. Aletum, based, in part, on a finding that Ms. Bonney had received Mr. Aletum's return phone call through Purple Relay and thus had knowledge of his disability.  *Id.* at 2 ("[T]he records reveal that [Mr. Aletum] returned Ms. Bonney's call on April 30, 2018 using Purple Relay service and the call lasted one minute.").  The EEOC also invited Mr. Aletum and Anchor Staffing to negotiate a resolution.  *Id*. at 3.  On July 17, 2019, the EEOC issued a Notice of Failure to Conciliate and issued Mr. Aletum a Right to Sue letter.  *Id.* at 4-5.

On July 23, 2019, Mr. Aletum filed an initial *pro se* complaint against John Wright, the former president of Anchor Staffing Agency.  ECF No. 1.  *See* ECF No. 11, at 1 ("Anchor Staffing Agency is a staffing company located in Hanover, Maryland; John Wright was its president.").  Mr. Wright filed an initial Motion to Dismiss on August 17, 2020.  ECF No. 11.  The Motion was granted without prejudice on November 2, 2020 for failure to state a claim.  ECF No. 22.  Mr. Aletum secured counsel on August 6, 2021, ECF No. 34, and subsequently filed an Amended Complaint against Anchor Staffing on September 1, 2021.  ECF No. 39.  Anchor Staffing filed an Answer to the Amended Complaint on September 21, 2021.  ECF No. 45.  After discovery, Anchor Staffing filed the pending Motion for Summary Judgment on May 27, 2022.  ECF No. 62.  Mr. Aletum filed a Motion in Opposition to Summary Judgment on July 1, 2022.  ECF No. 68.  On July 19, 2022, Anchor Staffing filed a Response in Support of the Pending Motion.  ECF No. 69.

## STANDARD OF REVIEW

The Court will only grant a motion for summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there are factual issues "that properly can be resolved only

by a finder of fact because they may reasonably be resolved in favor of either party," then the

Court must deny the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Pulliam*

*Co., Inc. v. Cameo Properties*, 810 F.2d. 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor*

*Co., LTD.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390,

394 (4th Cir. 1950). The moving party bears the burden of showing that there are no genuine

issues of material fact. Fed. R. Civ. P. 56(a); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de*

*France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

## ANALYSIS

Defendant advances three arguments in its Motion. First, Defendant argues that Plaintiff

has no evidence that Anchor Staffing did not hire him because of his disability. ECF No. 62-1, at

4. Second, and relatedly, Defendant argues that Plaintiff fails to provide information about who

Anchor Staffing ultimately hired for the job for which he applied, which allegedly prevents him

from proving that he would have been hired "but for" his disability. ECF No. 62-1, at 9. Third,

Defendant argues that Plaintiff's evidence of pretext is insufficient to survive a motion for

summary judgment. ECF No 62-1, at 11. Considering the facts and applicable law, I find that

Plaintiff has presented a genuine issue of material fact and, thus, summary judgment is

inappropriate.

"No covered entity shall discriminate against a qualified individual on the basis of

disability in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of

employment." 42 U.S.C. § 12112(a). A disability is defined as: "(A) a physical or mental

impairment that substantially limits one or more major life activities of such individual; (B) a

record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §

12102(1).  Major life activities include hearing.  29 C.F.R. § 1630.2(i).  Accordingly, "it should be easily concluded that . . . deafness substantially limits hearing" and renders an individual as having a disability.  *Id*. (j)(3)(iii).  A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(m).

Under Title I of the ADA, the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the business of [the employer]."   42 U.S.C. § 12112(b)(5)(A). Discrimination also includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(B).

Plaintiffs may advance a claim that an employer discriminated against them on the basis of their disability in one of two ways.  They can produce "direct evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact."  *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (cleaned up).  Alternatively, they may follow the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Using this framework, a plaintiff can advance a claim for disability discrimination under the ADA by establishing a *prima facie* case of discrimination, which requires demonstrating that the plaintiff: (1) has a disability; (2) applied for a vacant position; (3) for which they are qualified; and (4) "[has a] disability [which] played a motivating role in the employer's refusal to hire them."  *E.E.O.C. v. Cracker Barrel Old Country Store, Inc.*, No. 8:18-cv-02674-PX, 2020 WL 247305, at *3 (D. Md. Jan. 16, 2020).  *See Martell v. Sparrows Point Scrap*

*Processing, LLC*, 214 F.Supp.2d 527, 528 (D. Md. 2002) (citing *Baird v. Rose*, 192 F.3d 462, 466, 470 (4th Cir. 1999)).

Once a plaintiff has made their *prima facie* case, the burden of production shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the employer does so, then the burden returns to the plaintiff, who must prove by a preponderance of the evidence "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575-76 (4th Cir. 2015). If the defendant does not submit evidence of a legitimate basis for its actions, then the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). *See Aletum v. Kuehne + Nagel Company*, No. ELH-19-1972, 2020 WL 1955553, at *9 (D. Md. Apr. 23, 2020).

## I.     *Prima Facie* Case

Plaintiff does not put forward direct evidence of discrimination and instead proceeds under the *McDonnell Douglas* framework. If he successfully meets the four prongs of a *prima facie* case, he creates a presumption of discrimination that Defendant must rebut.

Defendant does not meaningfully dispute any of the first three prongs; accordingly, they can be dispensed with briefly. Plaintiff has sufficiently alleged that he has a recognized disability under the ADA. ECF No. 68-1, at 58*; see also* 29 C.F.R. § 1630.2(i) (providing that "hearing" is

one of the life activities contemplated by the ADA); *Cracker Barrel*, 2020 WL 247305, at \*3 (recognizing that deafness is an ADA-recognized disability).  Indeed, this Court has recognized in prior cases that Mr. Aletum has a recognized disability. *Kuehne + Nagel Co.*, 2020 WL 1955553, at \*10.  Defendant does not dispute Mr. Aletum's disability status.  *See* ECF No. 62-1, at 1 ("Mr. Aletum is deaf.").

Plaintiff has also alleged that he applied to work with Anchor Staffing, ECF No. 70, at 53, a point which Defendant's Motion does not dispute.  *See* ECF No. 62-1, at 1 ("[Plaintiff] alleges that he was subjected to disability-based discrimination in violation of the Americans with Disabilities Act when he applied for, but was not selected for, a job through Defendant Anchor Staffing.").

Plaintiff has also alleged that he was qualified for the position, based on the overlap between his prior experience and the job posting. Plaintiff alleges that the posting stated that the Warehouse Manager position was "[r]esponsible for the entire warehouse operation, facilities management, operations management and customer service."  ECF No. 68-1, at 13.  Plaintiff demonstrated that he had three years of warehouse management experience and attached his resume to his application.  ECF No. 70, at 21-22; ECF No. 68-1, at 25-28.  In his role as the warehouse supervisor/order builder for Coca-Cola Refreshments, Mr. Aletum's duties included supervising the warehousing and shipping of materials; supervising personnel; staffing, training, evaluating, and developing team members; supervising the daily activities of the warehouse; scheduling warehouse team members to meet facility demands; overseeing shipping and receiving, and managing within the relevant budgets.  ECF No. 68-1, at 25.  These duties are reasonably congruent with the duties listed on the Indeed.com job posting.  *Id*. at 13.  While Defendant questions Mr. Aletum's "assumption" that Defendant would have offered him the position but for

his disability, ECF No. 62-1 at 10, Anchor Staffing fails to challenge meaningfully Mr. Aletum's

allegations or deposition testimony that he was qualified for the underlying position.[1] *See also*

ECF No. 69, at 2-3.

Defendant, however, does contest whether Mr. Aletum's disability played a motivating

role in its refusal to hire him, claiming that he has presented insufficient evidence that Ms. Bonney

discriminated against him.   ECF No. 62-1, at 4.   Defendant additionally argues that because

Plaintiff has failed to present any information regarding the identity of the person who was hired,

he cannot prove he would have gotten the job "but for" his disability."   ECF No. 62-1, at 9.

In determining whether a disability played a motivating role in an employer's refusal to

hire a candidate, the court may look to whether there is a temporal relationship between when the

employer learned of an applicant's disability and when it made the relevant hiring decision.[2]   If

the temporal relationship is combined with a change in treatment or status, this may be sufficient

to establish motivation for the purpose of a *prima facie* case.   For example, in *Cracker Barrel*,

2020 WL 247305, at *4, the plaintiff scheduled an employment interview, during which the

restaurant's General Manager discovered the plaintiff experienced hearing loss because of his use

---

[1] In a footnote in Defendant's reply, ECF No. 69, at 3-4 n. 1, Anchor Staffing notes, in passing, a discrepancy in Plaintiff's resume as to whether he had three years of continuous warehouse experience. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (noting that a court need not address issues raised briefly without argument or explanation).

[2] Defendant's filings, in characterizing Plaintiff's claim as being based solely on Ms. Bonney's "rude" conduct, ignore the timing and change in treatment components of his position.   ECF No. 69, at 1.   Plaintiff's claim is not limited to solely Ms. Bonney's demeanor, but is focused on Ms. Bonney's initial expression of interest in Mr. Aletum's application, and the timing between when she allegedly discovered that Mr. Aletum has a disability and her subsequent lack of interest in his application thereafter. *See* ECF No. 68, at 8.   This court has previously rejected attempts to dismiss a change in treatment after a defendant learns of a plaintiff's disability as nothing more than innocuous conduct irrelevant to causation. *See Cracker Barrel*, 2020 WL 247305, at *4 (rejecting, on a motion for summary judgment, that exclusion from consideration was nothing more than a "mistake" where defendant treated applicant differently after learning of his disability).

of a videophone service.  *Id*.  After the interview, "the supervisors stonewalled [plaintiff]," cancelling a second interview and failing to answer his follow-up phone calls.  *Id*. at *3.  The court found this persuasive evidence of discriminatory motive because Cracker Barrel maintained enthusiasm for hiring the plaintiff until it learned he had a hearing impairment, after which they "turned away without explanation" and "never rescheduled despite his repeated attempts to do so." *Id*. at *4.  Accordingly, this Court denied defendant's motion for summary judgment because a reasonable juror could find that the plaintiff was denied employment based on his hearing impairment. *Id.  See also Allen v. Johnson*, No. DKC 09-1503, 2010 WL 2431022, at *4 (D. Md. Jun. 10, 2010) (finding that "the evidence permits an inference of discrimination based on the timing of events" because the results of plaintiff's background investigation only became important in the hiring process once the employer was made aware of the cost of accommodating plaintiff's deafness).[3]

Similarly, in this case, Ms. Bonney expressed interest in Plaintiff's application by making an initial call through the Purple Relay service and leaving a voicemail asking Plaintiff to return her call for a conversation regarding the position.  ECF No. 70, at 54.  However, after Plaintiff called Ms. Bonney back through an interpreter, she abruptly hung up on him, indicated in a follow-up call that she would call him back after interviewing other applicants, and then failed to call him back at any point in the next five months.  *Id*. at 71.  Like the cases above, in this case, an employer expressed interest into a candidate and then, soon after discovering that the candidate had a hearing impairment, took that candidate out of consideration.  Accordingly, Mr. Aletum, rather than

---

[3] In *Washington v. Montgomery County*, this Court similarly found that the plaintiff had plausibly pled a violation of the ADA for failure to hire, in part, because the employer initially had contacted the plaintiff to collect information relevant to the application process, but failed to follow up after learning of plaintiff's disability and then later rescinded her offer of employment.  No. GJH-17-3046, 2018 WL 3585259, at *5 (D. Md. Jul. 6, 2018).

relying on a "self-serving opinion", has advanced a plausible connection between the discovery of his disability and the decision made regarding his candidacy. *Cf. Williams v. Giant Food, Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) (holding that plaintiff's testimony that her performance evaluations were unfair, untrue and incorrect was insufficient, by itself, to defeat summary judgment). Accordingly, Plaintiff has sufficiently advanced a *prima facie* case for the purpose of a motion for summary judgment.

Defendant's contention that Plaintiff has failed to identify the person who it ultimately hired does not alter this result. Such evidence can support the causal element in a failure to hire case, *see Washington*, 2018 WL 3585259, at *5, but it is not required to assert a *prima facie* case. *See Cracker Barrel*, 2020 WL 247305, at *3-4; *see also Laing v. Federal Exp. Corp.*, 703 F.3d 713, 720 (4th Cir. 2013) (noting that even at step 3: "notwithstanding the virtues of comparator evidence, it of course remains the case that a plaintiff is 'not required as a matter of law to point to a similarly situated . . . comparator in order to succeed' on a discrimination claim." (internal citations omitted)). Defendant's argument misconstrues the Fourth Circuit's decision in *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016), mistakenly equating the need to find "but for" causation with the need to identify the identity of the person who was ultimately hired for the position. ECF No. 62-1, at 10. The court in *Gentry* upheld a lower court's jury instruction that asked the plaintiff to prove that his disability was the reason he was terminated. Although the court mentioned the individual who fulfilled the plaintiff's responsibilities, their identity was not material to the decision. 816 F.3d at 232. The court did not discuss their disability status or their qualifications.[4] *Id.*

---

[4] To the extent the court discussed the individual, he was relevant only as to whether the plaintiff, at step 3 of the analysis, could disprove the defendant's asserted justification. *Gentry*, 816 F.3d at 232 ("Gentry also presented evidence to undercut Appellees' cost-saving rationale, including

Like the plaintiff in *Cracker Barrel*, Plaintiff here has sought to establish "but for"

causation by presenting evidence that shortly after learning of his disability, Defendant stopped

considering his application.  While evidence the person hired did not have a disability or was less

qualified would further bolster Plaintiff's claim, under this Court and the Fourth Circuit's

precedents, it is not necessary to establish "but for" causation.  *Laing*, 703 F.3d at 720 (stating that

for the purpose of causation at step 1: "the close temporal proximity between the two – [plaintiff]

was suspended on the morning of her return from medical leave and terminated within the month

– is sufficient to establish the requisite causal nexus.").  *See also Israelitt v. Enter Servs. LLC*, No.

SAG-18-1454, 2021 U.S. Dist. LEXIS 38821, at *19-*20 (D. Md. Mar. 2, 2021) (applying the

"but for" standard, but not requiring the plaintiff to present evidence regarding plaintiff's

replacement to meet the standard).[5]

---

evidence indicating that Richard Smith, who had assumed Gentry's responsibilities, performed only minimal maintenance duties and that his pay eventually increased to be only $4,000 to $5,000 less than Gentry's.")

[5] Defendant also cites two other cases in support of its argument that Plaintiff has failed to present sufficient evidence of motivation to assert a *prima facie* case.  First, Defendant cites the Fourth Circuit's decision in *Pugh v. Wilkie*, 759 Fed. Appx. 177 (4th Cir. 2019), in support of its position that Plaintiff has presented insufficient evidence linking Defendant's actions to his disability.  *See* ECF No. 62-1 at 4-5 ("Without basis in fact or even common experience, he appears to draw a straight line between these alleged actions – which could constitute, at best, discourteous behavior – and intentional discrimination.").  However, the court's decision in *Pugh* did not turn on an insufficient causal link at step one, but rather: 1) given the defendant's presentation of a legitimate basis for its decision, Pugh's failure to establish intent at step three, 759 Fed. Appx. at 180 ("any prior decision not to board Pugh was entirely consistent with the performance-based concerns that his supervisor had already expressed and the myriad problems detected during the examination of the computer training program."); and 2) the defendant's prompt efforts to correct the alleged adverse action.  *See id.* ("However, the warehouse supervisor removed Pugh from any hazardous setting on Pugh's first day, and management transferred Pugh from the warehouse altogether within the first week.").  The Fourth Circuit assumed that Pugh had satisfied its burden at step one. *See id.* at 179 ("we can assume, without deciding, that Pugh discharged his initial *prima facie* burden of establishing race, age, and disability discrimination.").  In this case, Anchor Staffing has failed to offer any explanation for its failure to hire Plaintiff, and no efforts were taken to correct the alleged adverse action.  Likewise, Defendant cites language from the Fourth Circuit's decision

II.      **Defendant's Failure to Rebut Plaintiff's *Prima Facie* Case.**

As Plaintiff has made a *prima facie* case of discrimination, the burden shifts to Defendant

to establish a non-discriminatory reason for its refusal to hire Mr. Aletum.  Defendant fails to do

so.

Under the *McDonnell Douglas* framework, once a plaintiff has established a *prima facie*

case of discrimination, the burden of production shifts to the employer to articulate a non-

discriminatory reason for the adverse action.  *Gomez v. Haystax Technology Inc.*, 761 Fed.Appx.

220, 235 (4th Cir. 2019); *see also Allen*, 2010 WL 2431022, at *3 ("If a plaintiff alleges that the

reason for his non-hire was discriminatory, the defendant has an opportunity to offer a legitimate,

non-discriminatory reason for the rejection of the applicant.") (citing *Williams v. Staples, Inc.*, 372

F.3d 662, 668 (4th Cir. 2004)).  "Conversely, if the defendant does not submit evidence of a

legitimate basis for its actions, the factfinder may 'infer discriminatory animus because experience

has proved that in the absence of any other explanation it is more likely than not that those actions

were bottomed on impermissible considerations."  *Kuehne + Nagel Company*, 2020 WL 1955553,

at *9 (citing *Furnco Const. Corp.*, 438 U.S. at 579-80).

Courts in this Circuit, including this one, have found a variety of explanations sufficient to

rebut a *prima facie* case of discrimination.  *See e.g. Anderson v. Discovery Communications, LLC*,

517 Fed.Appx. 190, 196-97 (4th Cir. 2013) (granting summary judgment in favor of defendants

---

in *Laing v. Federal Exp. Corp.*, 703 F.3d 713 (4th Cir. 2013), regarding the importance of
comparator evidence.  ECF No. 69, at 4.  However, the court in *Laing* emphasized the need for
such evidence in the context of whether a plaintiff could prove that the defendant's stated reason
for an adverse employment action was pretextual, not whether plaintiff could establish causation
as part of a *prima facie* case.  *See* 703 F.3d at 719 ("it is at this third step that *McDonnell Douglas*
identified the significance of comparator evidence: the Court explained that 'especially relevant'
to a showing of pretext would be evidence that other employees who were similarly situated to the
plaintiff (but for the protected characteristic) were treated more favorably." (internal citations
omitted)).

upon showing of a "long, documented history of [plaintiff's] inability to communicate accurately and truthfully with her co-workers"); *Rowe v. Marley Co.*, 233 F.3d 825, 830-31 (4th Cir. 2000) (affirming the district court's acceptance of employer's non-discriminatory explanation because the employee was terminated as part of a "company-wide reduction-in-force, which, by necessity, meant that some employees would lose their jobs"); *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."); *Allen*, 2010 WL 2431022, at *4 (granting summary judgment in favor of defendants after plaintiff failed to show that defendants' proffered explanation of non-hiring based on past allegations of sexual misconduct was pretextual).

Defendant here fails to present any reason it excluded Plaintiff from its application process. Defendant's argument that Plaintiff has to demonstrate that he was more qualified than the individual Anchor Staffing eventually hired confuses the relevant question. Because Plaintiff has made a *prima facie* case of discrimination, the burden shifts to Defendant to articulate a non-discriminatory reason for its failure to hire Mr. Aletum. While Defendant criticizes Plaintiff for failing to allow for the possibility of more-qualified candidates, Defendant fails to establish, with evidence, that Anchor Staffing ultimately hired someone who was more qualified for the position. Although Ms. Bonney's affidavit states that "[t]he Position of Warehouse Manager was filled by me with someone other than Mr. Aletum," it includes no explanation as to why this candidate was chosen over Mr. Aletum. ECF No. 68-1, at 8. Nor does Defendant present any evidence that any potential issues with Mr. Aletum's application or potential concerns that emerged during his conversation with Ms. Bonney were the basis for Defendant's failure to hire him.

14

Given Defendant's failure to advance a non-discriminatory explanation for its hiring decision, it has not made the showing required for summary judgment.

### III.  Evidence of Pretext

Finally, Defendant argues that even if Ms. Bonney's statement to the EEOC was inaccurate, Plaintiff would still have to prove that both the statement was false and that discrimination was the real reason for the challenged conduct.  ECF No. 62-1, at 12.  While Plaintiff retains the ultimate burden of proof in discrimination cases, *Jacobs*, 780 F.3d at 575-76, Defendant's argument ignores the relevant question at this step of the analysis.  Defendant cannot prevail on a motion for summary judgment unless it rebuts Plaintiff's *prima facie* case; as discussed, it has not done so.  Regardless, even if Defendant had, Plaintiff has presented sufficient evidence to create an issue of material fact as to whether the failure to hire Mr. Aletum was pretextual.

"[I]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."  *Reeves*, 530 U.S. at 147.  *See Rowe*, 233 F.3d at 829 (applying *Reeves* to an ADA discrimination claim)).  "In the final steps of this analysis, the trier of fact's 'rejection [or disbelief] of the [employer's] proffered reasons [for its actions] will *permit* the trier . . . to infer the ultimate fact of intentional discrimination."  *Wilson v. Phoenix Specialty Mfg. Co., Inc.*, 513 F.3d 378, 387 (4th Cir. 2008) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).  "Where the plaintiff can show the falsity of the defendant's proffered explanation and a reasonable jury could infer that the explanation is pretextual, summary judgment is inappropriate."  *Allen*, 2010 WL 2431022, at *3. While a claim "should not be submitted to a jury if there is evidence that precludes a finding of discrimination," "absent such evidence, courts may not require a plaintiff who proves both a *prima*

*facie* case and pretext to produce an additional proof of discrimination in order to survive a defendant's motion for summary judgment." *Rowe*, 233 F.3d at 830.

In *Wilson*, the Fourth Circuit affirmed a lower court's finding that the employer's proffered reasons for terminating the employee were merely a pretext for discrimination "based in part on the court's determination that the reasons the company gave to the EEOC were different than the one advanced at trial." *Wilson*, 513 F.3d at 387. It was not until trial, in that case, that the defendant company claimed that a new computer system had replaced the employee's job responsibilities and prompted his termination. *Id*. The district court found, and the circuit affirmed, that advancing different reasons at different stages of the investigation and litigation indicated that those reasons were merely pretext for discrimination on the basis of his disability. *Id*. at 384.

In this case, Anchor Staffing has similarly advanced inconsistent explanations to defend its decision. When the EEOC was evaluating this case, Ms. Bonney claimed that she had never spoken to Mr. Aletum and thus could not have been aware of his disability. ECF No. 68-1, at 8. The EEOC refuted this contention, finding that "the records reveal that [Mr. Aletum] returned Ms. Bonney's call on April 30, 2018 using Purple Relay service and the call lasted one minute." *Id*. at 2. The EEOC found this sufficient evidence to rebut Defendant's "contention that it lacked knowledge of [Mr. Aletum's] disability and [Anchor Staffing's] articulated rationale for not hiring him" and to establish that Defendant violated the ADA by failing to hire him because of his disability. *Id*. Defendant's present Motion makes no attempt to explain this discrepancy or provide any reason for Defendant's actions.

Contrary to Defendant's position, the discrepancy between Ms. Bonney's affidavit and the relevant telephone records is material. *See* ECF No. 62-1, at 11. The differing accounts speak to

the level of interest Defendant demonstrated in Plaintiff's application, whether Defendant was and when Defendant became aware of Plaintiff's disability, and why ultimately Defendant did not follow up with Plaintiff.  Far from being immaterial, establishing whether or not the parties spoke is highly relevant as to whether the core interaction, at issue, may or may not have constituted discrimination.  Accordingly, a reasonable jury could conclude that Ms. Bonney's false affidavit, combined with Defendant's present failure to provide an explanation for its failure to hire Plaintiff, support a finding of discrimination on the basis of disability.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is, hereby, denied.

So ordered.

Date:  March 27, 2023                                  _____/s/_____
                                                      Ajmel A. Quereshi
                                                      U.S. Magistrate Judge